United States v. Manatee 22-3167 We'll let everybody get settled up at their table. You've reserved three minutes for rebuttal. You may proceed whenever you're ready. Great. May it please the Court, my name is Adam Alewa and it's my pleasure to represent Appellant Defendant Vito Manatee. I appreciate the panel taking the time to hear oral argument in Mr. Manatee's case. I understand I come here under plain error standard of review. I believe I have satisfied that standard. The record created by the lower court was simply deficient and introduced errors that I believe undermine the fairness, integrity and exceptional reputation of this district. First, to put Mr. Manatee's 24-month sentence into context, the sentence was six months above the top of the range for the underlying conviction of extortion. It was six months above the range. His co-defendant threatened to bury the guy. He threatened to bury the guy, right? Correct. In his backyard. And he had a front loader right there, right? No, hang on. Yeah. And he had a front loader right there, correct? Yes, the facts underlying the probation violation were disturbing. So let me just ask this. When you're looking as a district court at whether someone has meaning we trust that one of the things you're going to abide by all the rules of probation, right? Yes. We're dealing audibly with the transcript, sorry. And one of the things you're not allowed to do is to commit a crime, correct? Correct. And a crime would be beating somebody to a pulp with a baseball bat and threatening to bury them in the yard, correct? Correct, absolutely. Okay. Just want to make sure we're on the same page. Yeah. And had he been sentenced, so the underlying assault case hadn't been resolved and the district court wasn't in a position to resolve, you know, all the facts surrounding that assault. Well, they resolved those facts, right? He accepted those facts as true, correct? The district court? Yes. And he was entitled to do so because he had to find only by a preponderance of the evidence what had happened. And that probation violation included threatening to kill him. Correct. It's pretty bad. Yeah, it is bad. The standard for sentencing for probation violations is supposed to not focus on the underlying conduct of the assault. Except to the extent that it reflects the extent to which there has been an abuse of trust. And we have said that those are not unrelated concepts. Correct, but it's only supposed to take into fairly limited consideration. Fairly limited. And this wasn't a case where the district court took into fairly limited consideration. It was the primary or overwhelming focus of the four pages of the sentence. There's only four pages of analysis of why the sentence was appropriate. And the vast majority was on these very disturbing underlying facts. When it came to, you know, providing detail for why there was a breach of trust, it was mostly a recitation of the guidelines. And I'd also like to add that, you know, the guidelines were relevant for crimes of violence. So the guidelines recommended a range... Guidelines, I'm sorry, but the guidelines have always been advisory even before Booker, right? Correct. Yes, correct. Because we're in probation violation world, right? Correct. So they're not binding on the district court. Yes, correct. Under Sedema, however, the judge had an obligation to go above, you know, you can't just say, well, this was a crime of violence and it wasn't a technical violation. There needs to be more explanation for why an above guideline sentence was appropriate. And that explanation shouldn't properly focus on the disturbing nature overwhelmingly. It should only be a limited consideration of the underlying facts of the assault. Because it's not been proven beyond a reasonable doubt. It's just a lower standard. So to overwhelmingly focus on the underlying nature of the assault is not 100% appropriate for a probation sentence. Am I correct? We're reviewing for plain error? Correct. Correct. And I believe, you know, errors were introduced that create plain error when you add them up. There was a focus on things that were lies that weren't in fact lies. There was a focus on, you know, the prevailing law in the Second Circuit is that if the judge is taking into consideration untruthful statements, there needs to be a finding of perjury. Simply someone testifying in a way that's considered untruthful or not accurate isn't the standard. Well, didn't the judge find that Mr. Minotti, quote, lied at the hearing? Lying means purposely telling an untruth, right? Well, the standard for perjury, the standard that the judge found under it was that it was incredible. That Mr. Minotti's testimony was incredible. I thought the judge used the word lie. Correct. There also needs to be, so if the judge is going to find on the basis of perjury, there also needs to be sufficient notice that the judge is going to find that. That I'm going to find based on perjury and give defense notice that this is what the upward variance was going to be based on. I mean, I thought the whole idea was that all of this testimony about going to New Jersey to work on the wife's house but it was really the wife who hired her own company and paid him so that she could get the money paid back to her company was just all so inherently implausible and that it was basically and fundamentally a lie by Mr. Minotti when he said, oh, I'm going, when I was going to New Jersey it was for work and that this was all a construct to hide the fact that he was going, this is where his family was. He wasn't going there for work. The facts were that he had used company resources to go there and oversee renovations on his wife's house. What company resources? I thought he just drove over there. He was using company equipment, I believe was the nature of it, company equipment and stuff. I thought the point was he wasn't allowed to travel to New Jersey except for work and he was over there for what was essentially a personal venture. He's helping his wife renovate their apartment, which they didn't even own. Correct. Again, the court found that it was implausible. I'm not here to contest that the court found that his testimony was implausible. She also found that he had made, that he had lied. However, the standard in the Second Circuit goes beyond simply lying. It has to be an actual finding of perjury, which is a willful decision by a defendant to obstruct the proceeding. And that wasn't found. And there's cases, including U.S. v. Conor Vallis, which is the 1992 case cited in the reply brief. Yes. Did she impose an obstruction enhancement or did she just say that's one of the reasons she found this very severe? She said it was just one of the reasons. And there's cases that are cited in the reply brief in which the, I believe Conor Vallis is one of them, in which the Second Circuit reversed where the judge only found that there was untruthful statements, where there's lies. There's only a finding of there being lies. And it didn't go, it didn't rise to the standard of perjury, which is a higher standard. So you've reserved three minutes for rebuttal. Why don't we hear from the government? Please. Good morning, and may it please the court. My name is Andrew Reich, and I represent the government in this case. The district court's judgment revoking Mr. Minotti's probation and sentencing him to 24 months plus supervision should be affirmed. The sentence was both procedurally and substantively reasonable, and the district court did not commit clear error in imposing that sentence. Rather, it articulated ample and appropriate justification for the sentencing determination, and in particular for its decision to impose a sentence that was above the term recommended by the policy statements in the United States sentencing guidelines. The district court's determination should not be disturbed. In January 2017, Mr. Minotti pled guilty to an extortion conspiracy. The offense carried a maximum sentence of 20 years' custody. However, the district court sentenced him to five years' probation based on the government's request for a downward departure from his recommended guidelines range as a result of his cooperation in that case. The district court advised Mr. Minotti that his conduct was serious and a violation of public trust, and that it was giving him the benefit of the doubt. Among other things, and as a result of certain disclosures he had made to the probation department at that time, the court admonished Mr. Minotti to tell the truth going forward. Nevertheless, in 2020, Mr. Minotti violated the terms of his probation by deceiving the probation department and traveling to New Jersey for non-employment purposes and committing a violent assault while there. The district court rightfully found this to be a significant violation of trust. In revoking a defendant's probation, a district court is to sanction primarily the defendant's breach of trust while also taking into account, to a more limited degree, the seriousness of the underlying violation. And that's exactly what happened here. The district court provided an extensive statement of reasons justifying Mr. Minotti's sentence that squarely addressed those goals. Its reasons, both individually and in the aggregate, were more than sufficient to meet the requirements of Section 3553C and plainly justified a sentence above the guidelines policy statements. Judge Irizarry identified several distinct violations of trust, and she acknowledged the significant break that Mr. Minotti received at his initial sentence, which also provides justification for an above-guideline sentence here, as explicitly contemplated in the guidelines at Section 7B1.4, Application Note 4. Starting first with the violations of trust, the district court stressed, among other things, Mr. Minotti's improper trips to New Jersey and his concealment from the probation department of the very existence of the family home there. The court stressed his having engaged in predatory behavior once again, just as with the conduct underlying his initial conviction. And the court stressed his dishonest testimony during the violation hearing, which was absolutely properly considered. Under both the Colley case, Your Honor, and the Vercogliat case in this court that the government cites in its submission, it is absolutely proper for the district court to cite that the defendant misled the court. And here he misled both the court and the probation department, and it's clear that the court took that into its determination. Section 3C1.1 of the guidelines with respect to probation, as Your Honor pointed out, is not appropriate here. It's not relevant here. It does not relate, excuse me, with respect to obstruction. It does not relate to a violation of probation, as is the case here, and it was not applied by this court. Rather, cases that this court has, opinions from this court with respect to probation, have discussed the proper consideration of dishonesty with the court and misleading the court. Lastly, citing the language of Guidelines Section 71.4, Application Note 4, the district court specifically observed that at the time of the original sentence in the case, the court downwardly departed due to Mr. Minotti's substantial assistance, and thus an upward departure may be warranted. The district court stated the defendant had been given a major break at his original sentencing and received a great deal of leniency, but was nevertheless sneaky and not forthright to the probation department, and it is with respect to that point that the district court stated, this is as severe a violation of trust to the court as you can get. Is Mr. Minotti still serving his term, or where does he stand on this? Yes, Your Honor, he is in the middle of his term now. When was his expected release date? I don't have the exact date, Your Honor. Your Honor, I believe he's approximately a year into the two-year term. This was a completely proper justification for the court's above-guideline sentence. A number of cases from this court have looked at very similar applications of that guideline and blessed it in those circumstances for Cogliad, Hurtado, Hahn, Farnham, all cited in the government's submission. This was a reasonable conclusion for the district court to make. Mr. Minotti's arguments here are unavailing. First, the district court did not rely on erroneous facts in imposing his sentence. It made an observation that was factually correct and justified, but in any event, the particular observation that Mr. Minotti cites, even if it were mistaken, is not what gave rise to the court's conclusions and its sentencing determination, which was based on extensive and appropriate reasoning. And as has been already pointed out, Mr. Minotti was dishonest to the court throughout the violation of probation hearing, including with respect to the very crux of the events that happened that gave rise to the additional crimes that are cited in his violation of probation. Secondly, Mr. Minotti has not identified any clear error by the district court in taking into account his frequent and flagrant travel to New Jersey against the court's previous orders. And lastly, Section 7B1.4, Application Note 4, was applied correctly and appropriately here. The district court cited ample reasoning for its application of that enhancement. Mr. Minotti has noted in his papers that 7B1.4, Note 4, is not mandatory, but rather permissive. The government agrees. In this case, the court made the determination that it was appropriate to apply that enhancement. And lastly, Mr. Minotti's assertions that his sentence was substantively unreasonable is also meritless for the reasons stated in the government's submission. So for all those reasons, the court should affirm the district court's judgment. And if there are no further questions, I'll rest on the government's submission. Thank you very much. Why don't we hear from counsel for the appellant who has reserved three minutes. I'd just like to address two points the governor made. The first one being about, you know, the fact that he received a big break at the first sentencing, therefore justifies, or in the government's brief, it was more than sufficient to justify the upward variance. Simply there being a break at sentencing is true of all probation sentencings, that everyone who receives a term, everyone who violates probation had received a break in the form of probation. No, that's not true. There are many defendants for whom that's the guideline recommended zone, right? They're in zone A, and probation is recommended. This guy got a 5K. Well, it's a very lenient sentence. I would say, you know, everyone who comes- Yeah, but some people get a substantial downward departure, and he got one, right? Right, correct. So it's not true of everybody who gets probation. It's true that everyone who receives a lenient sentence, I'll say, who receives probation. Well, but for some of them, that lenient sentence is what the guidelines recommend. It's within the range of the guidelines, correct, yes. And then, you know, if all that it took was a break at sentencing to receive an upward variance, there would be no need to explain the upward variance. So there still would be an explanatory need to say, well, why is it six months above the guidelines? Why is it not a decade over the guidelines? There's still a record that needs to be made with regard to the degree of the upward variance over the guidelines. And then, with the matter of the travel, you know, you're not justifying his travel as being okay. I think it was obviously in violation of the terms of his probation. It's just, you know, if that is the, you know, the government disagrees that that's the primary justification for his upward variance, but if that is the primary justification for his upward variance, I don't think that bears the weight of a sentence that's above the guidelines for the underlying offense, above the guidelines for his co-conspirator, who he cooperated against, and above, you know, the guidelines even for violent probation violations. If there's something, if there's no further questions. No, thank you both very much, and we will take the case under advisement. Thank you. Thank you both for coming today.